The FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for the New Bank of New England, N.A., Plaintiff,

v.

Steven D. HANSON, Defendant, Counterclaim Plaintiff,

v.

The FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for the Bank of New England, N.A., Counterclaim Defendant.

Steven D. HANSON, Plaintiff,

v.

The FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for the New Bank of New England, N.A., Defendants.

Civ. Nos. 4–91–72, 4–91–909.

United States District Court, D. Minnesota, Fourth Division.

Sept. 21, 1992.

James P. Larkin, Frederick K. Hauser and Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, Minn., for Steven D. Hanson.

Thomas Darling, George R. Wood and Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, Minn., for the New Bank of New England, N.A., Fleet/Norstar Financial Group, Inc. and the F.D.I.C.

## ORDER

DOTY, District Judge.

Two motions have been brought by the Federal Deposit Insurance Corporation ("FDIC"):

1. As a counterclaim defendant, the FDIC moves for summary judgment on the counterclaims of Steven D. Hanson ("Hanson") in the first action, Civil No. 4–91–72, for failure to comply with the statute of limitations set forth in 12 U.S.C. § 1821(d)(6)(B); and

2. Defendant FDIC moves for summary judgment on plaintiff Hanson's complaint in the second action, Civil No. 4–91–909. Based on a review of the file, record and proceedings herein, the FDIC's motion for summary judgment on the counterclaims of Hanson in the first action will be granted and the FDIC's motion for summary judgment as to Hanson in the second action will be granted.

## BACKGROUND

On July 16, 1985, the Bank of New England, N.A. ("BNE") loaned Hanson $1,075,-000.00, evidenced by a term note dated July 16, 1985.[1] In April 1986, BNE claimed that Hanson defaulted on the loan agreement. In August 1986, BNE filed a claim against Hanson Industries in Minnesota State Dis-

---

1. Hanson Industries also was a party to the loan and to the claims filed in Civil No. 4–91–72. However, on May 1, 1987, an involuntary bankruptcy petition was filed against Hanson Industries pursuant to 11 U.S.C. § 303. The bankruptcy court issued an order for relief against Hanson Industries pursuant to 11 U.S.C. § 303(h). A trustee was appointed and the trustee and BNE entered into an agreement whereby Hanson Industries released all of the claims it might have had against BNE. As a result of the bankruptcy settlement, only Hanson, in his individual capacity, remains a party to this litigation.

trict Court to collect on the alleged default. Hanson contends that BNE's claim that he defaulted on his loan is fraudulent and he filed a counterclaim asserting causes of action based both on contract and tort.

At approximately the same time, First Brookdale State Bank ("Brookdale") commenced foreclosure proceedings against a portion of Hanson's property that he used as part of the security for the loan. Brookdale purchased the property at a foreclosure sale on August 13, 1987. BNE, as the second mortgagee, redeemed the property on August 17, 1988. BNE then initiated proceedings to obtain new certificates of title to the property. The state court consolidated the title action with the underlying state court action to collect on the alleged default. The state court directed the Examiner of Titles to determine whether new certificates of title to the property should be issued to BNE. The examiner recommended that new certificates of title should be issued to BNE and the state court adopted that recommendation. The state court rejected Hanson's argument that the issuance of new certificates should be stayed pending resolution of Hanson's counterclaim. The state court then set the underlying action on for trial on February 11, 1991.

On January 6, 1991, however, the United States Comptroller of Currency declared BNE insolvent and placed it in receivership. The FDIC was appointed receiver of BNE pursuant to 12 U.S.C. § 1821(c). At the same time, the FDIC established the New Bank of New England, N.A., ("New BNE") as a "bridge bank" to purchase certain assets of BNE pursuant to 12 U.S.C. § 1821(n). Pursuant to a "Purchase and Assumption Agreement" dated January 6, 1991, between the FDIC as receiver for BNE and the FDIC in its corporate capacity as New BNE, New BNE purchased certain assets then owned by the FDIC as

receiver for BNE. Those assets included the property at issue in this litigation.

Following the FDIC's appointment as receiver for BNE, the underlying state court action was removed to federal court pursuant to 12 U.S.C. § 1819(b)(2)(B).[2] The court stayed the prosecution of Hanson's counterclaims in the first action until he complied with the administrative procedures set forth in the Federal Institutional Reform, Recovery, and Enforcement Act ("FIRREA"). *Federal Deposit Insurance Corporation v. Hanson,* Cv. No. 4–91–72 (D.Minn. Mar. 29, 1991). The court stated, however, that the stay did not prevent the FDIC from moving to dismiss Hanson's counterclaims if Hanson did not comply with the administrative procedures. *Id.* That stay remains in effect.

In November 1991, Hanson filed a new action ("second action") against New BNE seeking the imposition of a constructive trust on the property at issue in this litigation.[3] Hanson contends that the court should impose a constructive trust on the property because at the time New BNE acquired the property it knew of his claims against BNE. Hanson contends that a constructive trust is necessary to prevent the unjust enrichment of New BNE.

The FDIC now moves for summary judgment on Hanson's unjust enrichment claim in the second action. In addition, the FDIC moves to dismiss Hanson's counterclaims in the first action for failure to comply with the statute of limitations set forth in 12 U.S.C. § 1821(d)(6)(B) in seeking review of the FDIC's denial of his claim. The FDIC did not propose a standard for the court to apply to its motion to dismiss. The court notes, however, that both parties have included affidavits and other documents in their submissions to the court on that motion. Because the court has relied on those documents in making its determination, it shall treat the FDIC's motion to dismiss as

---

**2.** The removed case, which is assigned Civil No. 4–91–72, is the "first action."

**3.** Hanson also named Fleet/Norstar Financial Group, Inc. ("Fleet/Norstar") as a co-defendant in his complaint. Hanson alleges that Fleet/Norstar is a bank holding company that

purchased the assets of New BNE on July 15, 1991.

On June 8, 1992, the court ordered that the FDIC may be substituted for New BNE as the defendant in the second action and shall only refer to the FDIC as a defendant.

a motion for summary judgment. *See* Rules 12(b) and 56 of the Federal Rules of Civil Procedure. The court shall consider each of the FDIC's motions in turn.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however,

may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552. With this standard at hand, the court will consider the FDIC's motions for summary judgment.

1. *The FDIC's Motion for Summary Judgment on Hanson's Counterclaims in the First Action*

Pursuant to the court's order staying his counterclaims until the FDIC had an opportunity to rule on his claims, Hanson submitted his claims to the FDIC. On July 5, 1991, the FDIC sent Hanson a Notice of Disallowance of Claim ("notice") informing him that the FDIC had denied all of his claims. Letter from Rice to Hanson of 7/5/91. The notice, citing 12 U.S.C. § 1821(d)(6)(A),[4] set forth the procedure for contesting the FDIC's decision.

> If you wish to contest this decision, the *sole available procedure* for review of this determination is to file suit on such claim (or continue an action commenced before the appointment of the Receiver) in the United States District Court where the principal office of the failed depository institution was located, or in the United States District Court for the District of Columbia pursuant to 12 U.S.C. section 1821(d)(6)(A).

*Id.* (emphasis added). The notice, citing 12 U.S.C. § 1821(d)(6)(B),[5] further stated that

**4.** 12 U.S.C. § 1821(d)(6)(A) provides, in pertinent part, that:

> Before the end of the 60–day period beginning on ...
> (ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i), the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the

depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

**5.** 12 U.S.C. § 1821(d)(6)(B) provides that:

> If any claimant fails to—
> (i) request administrative review of any claim in accordance with subparagraph (A) or (B) of paragraph (7); or

if Hanson failed to undertake one of those options within sixty days of the issuance of the notice, the FDIC's denial of his claims would become final and he would have no further rights or remedies with respect to his claims. *Id.* Finally, the notice advised Hanson that he should contact the FDIC if he had any questions. *Id.*

It is undisputed that Hanson did not choose either of the options the FDIC set forth in its notice. Instead, on August 30, 1991, Hanson requested an administrative review of the disallowance of his claim pursuant to 12 U.S.C. § 1821(d)(7)(A). Section 1821(d)(7)(A) provides:

> If any claimant requests review under this subparagraph in lieu of filing or continuing any action under paragraph (6) and the Corporation agrees to such request, the Corporation shall consider the claim after opportunity for a hearing on the record. The final determination of the Corporation with respect to such claim shall be subject to judicial review under chapter 7 of title 5.

12 U.S.C. § 1821(d)(7)(A). On September 12, 1991, the FDIC denied Hanson's request for a review of its decision because it had not implemented an administrative procedure providing for such a review.

The FDIC contends that Hanson is not entitled to seek any other review because Hanson's sole remedy was judicial review and he is now barred from pursuing that remedy because the time limit for seeking such review has passed. The FDIC thus contends that its denial of his claims is final.[6] Hanson argues that further review is warranted because he complied with § 1821(d)(7)(A) which provides that he may

seek administrative review of the denial of his claims. Hanson contends that it does not make sense to grant summary judgment on his action and that either the FDIC or the court should review the FDIC's denial of his claims.

The court finds that Hanson's argument is not persuasive. Although FIRREA sets forth a procedure for administrative review of the FDIC's denial of a claim, *see* 12 U.S.C. § 1821(d)(6)(A), the FDIC has not chosen to implement that procedure. The FDIC has no obligation under FIRREA to establish administrative procedures for the review of its denial of a claim. Section 1821(d)(4) states:

**(4) Rulemaking authority relating to determination of claims**

The Corporation *may* prescribe regulations regarding the allowance or disallowance of claims by the receiver and providing for administrative determination of claims and review of such determination.

12 U.S.C. § 1821(d)(4) (emphasis added). Hanson would have the court order the FDIC to implement such a procedure even though the statute leaves the promulgation of such a procedure to the discretion of the FDIC. The court will not do so. *Cf. Philadelphia Television Broadcasting Co. v. Federal Communications Comm'n*, 359 F.2d 282, 284 (D.C.Cir.1966) ("In a statutory scheme in which Congress has given an agency various ... tools with which to protect the public interest, the agency is entitled to some leeway in choosing which ... regulatory tools will be most effective in advancing the Congressional objective.").

> (ii) file suit on such claim (or continue an action before the appointment of the receiver),
>
> before the end of the 60–day period described in subparagraph (A), the claim shall be deemed to be disallowed ... as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim.

6. The FDIC also argues in its reply brief that even if it did have a review procedure in place, it did not agree to review its denial of Hanson's claims as required by § 1821(d)(7)(A). The FDIC further argues in its reply brief that it did

not receive the notice of administrative review until September 11, 1991, which is more than sixty days after it issued the notice. Hanson contends that he mailed his request for an administrative review on August 30, 1991, within the sixty-day limit, and therefore, that his request for review is timely. The court concludes that it need not resolve those contentions because of its determination that Hanson is barred from seeking further review of the FDIC's denial of his claims because he failed to seek judicial review of the FDIC's decision or move the court for an order lifting the stay on the first action in a timely manner.

■ Neither will the court review the FDIC's denial of his claims. Hanson was on notice of the options available to him for contesting the FDIC's determination. Because Hanson failed to select either of those options and the sixty-day period for seeking such review has passed, Hanson is barred from seeking judicial review and the FDIC's determination is final. *See Praxis Properties, Inc. v. Colonial Sav. Bank*, 947 F.2d 49, 63 n. 13 (3rd Cir.1991) ("If within 60 days the claimant fails to pursue one of the ... routes authorized by section 1821(d)(6)(A) for review of RTC's denial of its claim, RTC's denial of the claim becomes a final determination."); *Capital Data Corp. v. Capital Nat'l Bank*, 778 F.Supp. 669, 674 (S.D.N.Y.1991) ("where a claimant fails to seek review of an FDIC disallowance within the allotted 60 day period, section 1821(d)(6)(B) directs that the claim 'be deemed to be disallowed ... such disallowance shall be final, and the claimant shall have no other rights or remedies with respect to such claim' "). Accordingly, the court concludes that summary judgment on Hanson's counterclaims is warranted.

2. *The FDIC's Motion for Summary Judgment on Hanson's Unjust Enrichment Claim in the Second Action*

■ Hanson contends that the court should impose a constructive trust on the property at issue in this case because New BNE knew of his claims against BNE when New BNE acquired the property from BNE. Hanson contends that if the court fails to impose a constructive trust on the property, the FDIC, as receiver for New BNE, will be unjustly enriched.

The court rejects Hanson's contention because as a bridge bank, New BNE is protected from such claims under 12 U.S.C. § 1821(n)(4)(I).[7] Section 1821(n)(4)(I) provides protection to a bridge bank against claims relating to the alleged wrongful actions taken by failed financial institutions, such as BNE, unless the alleged actions fall within the limited exception set forth in § 1821(n)(4)(I). *See Timberland Design, Inc. v. First Serv. Bank for Sav.*, 932 F.2d 46, 48–50 (1st Cir.1991) (*D'Oench, Duhme* bars affirmative claims such as deceit, negligent misrepresentation, breach of fiduciary duty and breach of contract against the FDIC); *Bowen v. Federal Deposit Ins. Corp.*, 915 F.2d 1013, 1016 (5th Cir.1990) (applying *D'Oench, Duhme* to bar claims of fraud, promissory estoppel, breach of fiduciary duty and breach of the duty of good faith and fair dealing against the FDIC); *Federal Deposit Ins. Corp. v. Kasal*, 913 F.2d 487, 493 (8th Cir.1990) (applying § 1823(e) to bar counterclaims against the FDIC alleging misappropriation, breach of contract, promissory estoppel, negligence and misrepresentation). It is immaterial whether New BNE had actual knowl-

---

7. 12 U.S.C. § 1821(n)(4)(I) provides:
   [N]o agreement which tends to diminish or defeat the right, title or interest of a bridge bank in any asset of an insured bank in default acquired by it shall be valid against the bridge bank unless such agreement—
   (i) is in writing,
   (ii) was executed by such insured bank in default and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by such insured bank in default,
   (iii) was approved by the board of directors of such insured bank in default or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
   (iv) has been, continuously from the time of its execution, an official record of such insured bank in default.
   The immunity provided to bridge banks under § 1821(n)(4)(I) is identical to the immunity pro-

vided to the FDIC under 12 U.S.C. § 1823(e), which is based on the Supreme Court's decision in *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). *See Texas Refrigeration Supply, Inc. v. Federal Deposit Ins. Corp.*, 953 F.2d 975, 979–980 and n. 6 (5th Cir.1992) ("In the Financial Institution Reform, Recovery, and Enforcement Act of 1989 Congress codified the case literature that extended *D'Oench, Duhme* protection to so-called 'bridge banks.' ... Section 1821(n)(4)(I) ... [contains] language nearly identical to that of § 1823(e).... The policy that drives the *D'Oench, Duhme* rule in the FDIC context applies equally when a bridge bank is involved...." (citations omitted) (footnotes omitted)). Accordingly, the court concludes that it may consider cases dealing with § 1823(e) in its consideration of Hanson's claim against New BNE.

edge of Hanson's claims prior to purchasing BNE's assets. *See Federal Deposit Ins. Corp. v. Kratz*, 898 F.2d 669, 671 (8th Cir.1990) ("even if FDIC had knowledge of the ... [deceit] prior to its acquisition of the ... [property], such knowledge is not relevant to whether § 1823(e) applies"); *Federal Deposit Ins. Corp. v. Roldan Fonseca*, 795 F.2d 1102, 1107 (1st Cir.1986) (claim of knowledge is "precisely what FDIC is protected from by virtue of Section 1823(e)"). Hanson has provided no evidence demonstrating that his unjust enrichment claim falls within the limited exception of § 1821(n)(4)(I). Accordingly, the court concludes that Hanson's constructive trust claim is barred under § 1821(n)(4)(I).[8]

Based on the foregoing, IT IS HEREBY ORDERED that:

1. The FDIC's motion for summary judgment on Hanson's counterclaim in the first action, Civil No. 4–91–72, is granted;

2. The FDIC's motion for summary judgment on Hanson's unjust enrichment claim in the second action, Civil No. 4–91–909, is granted; and

3. Let judgment be entered accordingly in the second action, Civil No. 4–91–909.

---

8. Because the court has determined that Hanson's claim is barred under § 1821(n)(4)(I), the court shall not address the other arguments the FDIC proffers in support of its motion for summary judgment.