# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 96-2091

_____

Steven D. Hanson,                          *
                                           *
          Appellant,                       *
                                           *
     v.                                    *
                                           *
Federal Deposit Insurance                  *
Corporation, as receiver for               *
the New Bank of New England,               *
N.A.,                                      *
                                           *
          Appellee.                        *

_____                    Appeals from the United States
                               District Court for the
No. 96-2514                    District of Minnesota.

_____

Federal Deposit Insurance                  *
Corporation, as receiver for               *
the New Bank of New England,               *
N.C., substituted as plaintiff             *
for the New Bank of New England,*
N.A.,                                      *
                                           *
          Appellee,                        *
                                           *
     v.                                    *
                                           *
Steven D. Hanson,                          *
                                           *
          Appellant.                       *

                               _____

          Submitted:  March 10, 1997

          Filed:  May 14, 1997

                               _____

Before MAGILL,[1] JOHN R. GIBSON, and MURPHY, Circuit Judges.

───────────

MAGILL, Circuit Judge.

This appeal arises from a collection action brought by the Bank of New England (BNE) against Steven D. Hanson and Hanson Industries, Inc. (Hanson Industries) for an alleged default on a revolving loan agreement. Hanson appeals the district court's[2] grant of summary judgment to the Federal Deposit Insurance Corporation (FDIC), as receiver for BNE, on several lender liability counterclaims raised by Hanson in BNE's collection action. Hanson also appeals the district court's grant of summary judgment to the FDIC, as receiver for the New Bank of New England (New BNE), in a related constructive trust action brought by Hanson. We affirm.

**I.**

On July 16, 1985, BNE and Hanson Industries, a Minnesota corporation in which Hanson held a majority interest, entered into a revolving loan agreement that was personally guaranteed by Hanson. The loan was also secured by a mortgage agreement granting BNE a second mortgage in real property owned by Hanson. In August 1986, BNE filed a claim in Minnesota state court against both Hanson and Hanson Industries to collect on an alleged default. Denying the default, Hanson and Hanson Industries filed several

───────────

[1]The Honorable Frank J. Magill was an active judge at the time this case was submitted and took senior status on April 1, 1997, before the opinion was filed.

[2]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

counterclaims against BNE, asserting tort and breach-of-contract claims arising out of the alleged default.[3]

In August 1987, First Brookdale State Bank (First Brookdale), another of Hanson's creditors, commenced foreclosure proceedings against a portion of Hanson's real property. BNE was the second mortgagee of this property pursuant to BNE's revolving loan agreement with Hanson Industries and Hanson. BNE later redeemed this property from First Brookdale on August 17, 1988. BNE then initiated proceedings in Minnesota state court to obtain new certificates of title for the real property.

On July 10, 1989, the Minnesota state court consolidated BNE's August 1986 collection action and BNE's August 1987 title action into a single proceeding. The state court then directed the Minnesota Examiner of Titles, on November 13, 1989, to determine whether new certificates of title for the property should be issued. The Examiner recommended that new certificates of title be issued to BNE. Hanson objected that the issuance of new certificates should be stayed pending resolution of Hanson's counterclaims against BNE. Over Hanson's objection, the state court adopted the Examiner's recommendation on July 13, 1990, and

---

[3]The loans were made to both Hanson and Hanson Industries, and both parties were named as defendants in BNE's collection action. In addition, both Hanson and Hanson Industries brought counterclaims against BNE. On May 1, 1987, however, an involuntary bankruptcy petition was filed against Hanson Industries. Pursuant to an agreement reached during the bankruptcy proceedings, Hanson Industries released any claims that it might have had against BNE. As a result of this agreement, only Hanson, in his individual capacity, remains a party to this litigation. See Federal Deposit Ins. Corp. v. Hanson, 799 F. Supp. 954, 955 n.1 (D. Minn. 1992), rev'd, 13 F.3d 1247 (8th Cir. 1994).

issued new certificates of title to BNE.  The state court set a hearing in BNE's collection action for February 11, 1991.

On January 6, 1991, prior to the hearing, the United States Comptroller of Currency declared BNE insolvent and placed BNE in receivership.  The FDIC was appointed receiver of BNE pursuant to 12 U.S.C. § 1821© (Supp. II 1990).  The FDIC established New BNE as a bridge bank, pursuant to 12 U.S.C. § 1821(n) (Supp. II 1990), to purchase certain assets of BNE, including the real property formerly owned by Hanson.

Because BNE had been placed in receivership, BNE's collection action, including Hanson's counterclaims, was removed to the district court on January 30, 1991.  Pursuant to 12 U.S.C. § 1821(d)(12) (Supp. II 1990), the FDIC received a stay of the collection action on March 29, 1991.  Hanson then filed his counterclaims with the FDIC as required under 12 U.S.C. § 1821(d)(3)-(13) (Supp. II 1990).

On July 5, 1991, the FDIC mailed a letter to Hanson's counsel, informing him that the FDIC was denying Hanson's counterclaims.  In the letter, the FDIC informed Hanson's counsel that:

> If you wish to contest this decision, the sole available procedure for review of this determination is to file suit on such claim (or continue an action commenced before the appointment of the Receiver) in the United States District Court . . . . Such action must be commenced before the end of the 60-day period beginning on the date of this notice, pursuant to 12 U.S.C. § 1821(d)(6)(B).  If such action is not taken by that date, the determination of the FDIC to disallow such claim shall be final, and there shall be no further rights or remedies with respect to such claim.

I J.A. at 222.

Notwithstanding the FDIC's letter, Hanson did not file suit or continue an action within sixty days. Instead, on August 30, 1991, Hanson requested that the FDIC provide administrative review of its denial of his claim. On September 12, 1991, the FDIC telephoned Hanson's counsel and informed him that the FDIC did not have any procedures in place for administrative review. The FDIC stated further that it would not perform such a review.

On November 18, 1991, Hanson filed an action against New BNE in the district court, claiming that New BNE was unjustly enriched when it took title to the real property that Hanson had formerly owned.[4] Hanson asked the district court to impose a constructive trust pursuant to Minnesota law on the real property.

In early 1992, the FDIC moved for summary judgment on Hanson's counterclaims from the collection action and for summary judgment in the constructive trust action. On September 21, 1992, the district court granted the FDIC's motions. Federal Deposit Ins. Corp. v. Hanson, 799 F. Supp. 954, 960 (D. Minn. 1992). Hanson appealed the grant of summary judgment on the constructive trust claim. This Court reversed and remanded on the ground that "the district court based its grant of summary judgment on an overly broad interpretation of the D'Oench, Duhme [D'Oench, Duhme & Co. v. Federal Deposit Ins. Co., 315 U.S. 447 (1942)] doctrine and its statutory progeny . . . ." Hanson v. Federal Deposit Ins. Corp., 13 F.3d 1247, 1253 (8th Cir. 1994).

On March 28, 1996, the district court again granted the FDIC summary judgment on the constructive trust claim, but this time the district court held that Hanson's constructive trust claim was

_____

[4]Because New BNE went into receivership soon thereafter, the FDIC was substituted for New BNE as the defendant in this action.

barred by issue preclusion.  Order (Mar. 28, 1996) at 10.  In addition, on May 28, 1996, the district court entered a final judgment granting the FDIC summary judgment on Hanson's counterclaims in the collection action.  The district court held that Hanson was barred from seeking judicial review because he failed to seek review in the manner and time prescribed by 12 U.S.C. § 1821(d)(6).  <u>See</u> Order at 7 (citing <u>Hanson</u>, 799 F. Supp. at 959).  Hanson appeals.

## II.

Hanson argues that, because his August 30, 1991 request for administrative review satisfied the jurisdictional requirements set forth in 12 U.S.C. § 1821(d)(6)(B), the district court has jurisdiction to review his counterclaims in the collection action.  We disagree.

We review the district court's grant of summary judgment to the FDIC de novo.  <u>See</u> <u>McCormack v. Citibank, N.A.</u>, 100 F.3d 532, 537 (8th Cir. 1996).  Summary judgment is appropriate only if the record, viewed in the light most favorable to the nonmoving party, presents no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  <u>Id.</u>; <u>see also</u> Fed. R. Civ. P. 56(c).  Furthermore, "[w]e may affirm on any ground supported by the record."  <u>Doe v. Norwest Bank Minnesota, N.A.</u>, 107 F.3d 1297, 1301 (8th Cir. 1997).

Hanson's appeal turns on the meaning of § 1821(d)(6)(B).  Specifically, § 1821(d)(6)(B) provides:

If any claimant fails to--

(I) request administrative review of any claim in accordance with subparagraph (A) or (B) of paragraph (7); or

(ii) file suit on such claim (or continue an action commenced before the appointment of the receiver),

before the end of the 60-day period described in subparagraph (A), the claim shall be deemed to be disallowed (other than any portion of such claim which was allowed by the receiver) as of the end of such period, such disallowance shall be final, <u>and the claimant shall have no further rights or remedies with respect to such claim.</u>

12 U.S.C. § 1821(d)(6)(B) (emphasis added).

Thus, the failure of a claimant to satisfy the requirements of § 1821(d)(6)(B) within the prescribed time period bars the claimant from seeking judicial review of his claim. <u>See</u> <u>Capital Data Corp. v. Capital Nat'l Bank</u>, 778 F. Supp. 669, 674 (S.D. N.Y. 1991); <u>cf.</u> <u>Praxis Properties, Inc. v. Colonial Sav. Bank</u>, 947 F.2d 49, 63 n.13 (3d Cir. 1991) (citing § 1821(d)(6)(B), to hold that "[i]f within 60 days the claimant fails to pursue one of the above three routes authorized by § 1821(d)(6)(A) [and again enumerated in § 1821(d)(6)(B)]" then the denial of his claim "becomes a final determination"). It is undisputed that Hanson did not file suit or continue an action within the relevant 60-day period. Thus, he did not meet the requirements of § 1821(d)(6)(B)(ii). Instead, Hanson argues that his August 30, 1991 request for administrative review satisfied the statutory requirements of § 1821(d)(6)(B)(I). Hanson argues that by satisfying § 1821(d)(6)(B)(I), he was able to satisfy the requirements of § 1821(d)(6)(B) as a whole and thereby preserve his right to judicial review.

We conclude that Hanson did not meet the requirement of § 1821(d)(6)(B)(I) that his request for administrative review be

"in accordance with subparagraph (A) or (B) of paragraph (7) . . . ."    12
U.S.C. § 1821(d)(6)(B)(I).   Paragraph 7(A) provides that:

> If any claimant requests review under this subparagraph
> in lieu of filing or continuing any action under paragraph (6)
> <u>and the Corporation agrees to such request</u>, the Corporation
> shall consider the claim after opportunity for a hearing on the
> record.

12 U.S.C. § 1821(d)(7)(A) (emphasis added).


Hanson did not meet the requirements of paragraph 7(A) because the
FDIC refused his request.  The FDIC specifically had already told Hanson
that it would not review his request for administrative review and had
already informed Hanson that his "sole available procedure for review" was
to file suit on his claim or continue an action commenced before
appointment of the receiver.  I J.A. at 222.  Notwithstanding the FDIC's
clear admonition to Hanson to proceed in the district court, Hanson did not
pursue judicial review, but instead chose to sit on his rights.  Moreover,
§ 1821(d)(7)(A) leaves to the FDIC the decision of whether to accept or
reject a claimant's request for administrative review.  Its decision to
deny Hanson's claim and to thereby allow him to proceed with his claim in
the district court was well within its discretion.  Thus, because the FDIC
did not "agree[] to such request," 12 U.S.C. § 1821(d)(7)(A), Hanson's
request for review was not "in accordance with" paragraph 7(A) as required
by § 1821(d)(6)(B)(I).


Nor was Hanson's request "in accordance with" paragraph 7(B).
Paragraph 7(B) empowers the FDIC to handle claims against a financial
institution in receivership, like the claim filed by Hanson, by means of
alternative dispute resolution processes.  <u>See</u>

- 8 -

12 U.S.C. § 1821(d)(7)(B)(I). Here, however, the FDIC did not choose to handle Hanson's claim against BNE by means of such a process, but instead informed Hanson that his "sole available procedure for review" was to file suit on his claim or continue an action commenced before appointment of the receiver. I J.A. at 222.

Because Hanson failed to meet the requirements of either paragraph 7(A) or paragraph 7(B), he failed to meet the requirements of § 1821(d)(6)(B)(I), and as a result, Hanson failed to meet the requirements of § 1821(d)(6)(B) as a whole. Thus, because Hanson sat on his rights, he is now precluded under § 1821(d)(6)(B) from seeking judicial review. Accordingly, the district court did not have jurisdiction to hear Hanson's counterclaims, and summary judgment on those claims was therefore proper.

### III.

The FDIC argues for the first time on appeal that 12 U.S.C. § 1821(j) (Supp. II 1990) bars the district court from hearing Hanson's constructive trust claim.[5] We agree.

---

[5]Section 1821(j) limits the subject matter jurisdiction of federal and state courts by providing that, except under certain circumstances, "no court may take any action . . . ." 12 U.S.C. § 1821(j) (Supp. II 1990) (emphasis added). Because § 1821(j) limits subject matter jurisdiction, we can consider for the first time on appeal the FDIC's argument that, pursuant to § 1821(j), the district court does not have subject matter jurisdiction to hear Hanson's constructive trust claim. See Preferred Risk Mut. Ins. Co. v. United States, 86 F.3d 789, 793 (8th Cir. 1996) ("[Q]uestions of subject-matter jurisdiction may be raised at any time and may not be waived."), cert. denied, 117 S. Ct. 1245 (1997).

Section 1821(j), which was enacted as part of § 212(a) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. No. 101-73, 103 Stat. 183, provides:

> Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver.

12 U.S.C. § 1821(j). Section 1821 does not provide any exceptions that would apply to the present action, nor has the Board of Directors requested, by means of regulation or order, that the district court take action to impose a constructive trust. Hanson instead argues that a constructive trust would not "restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver," 12 U.S.C. § 1821(j), because, according to Hanson, a constructive trust would merely reduce the price of the real property. Thus, according to Hanson, § 1821(j) does not bar the district court from hearing his constructive trust claim.

Section 1821(j), however, "effect[s] a sweeping ouster of courts' power to grant equitable remedies . . . ." Freeman v. Federal Deposit Ins. Corp., 56 F.3d 1394, 1399 (D.C. Cir. 1995); accord Tri-State Hotels v. Federal Deposit Ins. Corp., 79 F.3d 707, 715 (8th Cir. 1996) (quoting Freeman). As the Circuit Court for the District of Columbia has explained:

> Although [§ 1821(j)'s] limitation on courts' power to grant equitable relief may appear drastic, it fully accords with the intent of Congress at the time it enacted FIRREA in the midst of the savings and loan insolvency crisis to enable the FDIC and the Resolution Trust Corporation ("RTC") to expeditiously wind up the affairs of literally hundreds of failed financial institutions throughout the country.

Freeman, 56 F.3d at 1398.

As a receiver, the FDIC has substantial powers over New BNE's assets, which include the real property formerly owned by Hanson. Under 12 U.S.C. § 1821(d)(2)(A)(I), the FDIC, as a receiver, succeeds to "all rights, titles, powers, and privileges of the insured depository institution . . . ." 12 U.S.C. § 1821(d)(2)(A)(I) (Supp II. 1990). In addition, the FDIC, as receiver, may "place the insured depository institution in liquidation and proceed to realize upon the assets of the institution," 12 U.S.C. § 1821(d)(2)(E) (Supp II. 1990), "transfer any asset or liability of the institution," 12 U.S.C. § 1821(d)(2)(G)(I)(II) (Supp II. 1990), and "exercise . . . such incidental powers as shall be necessary to carry out [its stated] powers." 12 U.S.C. § 1821(d)(2)(J)(I) (Supp II. 1990). "The exercise of these powers may not be restrained by any court, regardless of the claimant's likelihood of success on the merits of his underlying claims." Freeman, 56 F.3d at 1399.

Imposition of a constructive trust would necessarily "restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." 12 U.S.C. § 1821(j). Under Minnesota law, a constructive trust arises "[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it . . . ." Thompson v. Nesheim, 159 N.W.2d 910, 917 (Minn. 1968). "A court of equity, in decreeing a constructive trust, is bound by no unyielding formula, but is free to effect justice according to the equities peculiar to each transaction wherever a failure to perform a duty to convey would result in unjust enrichment." Id. at 916. By imposing a constructive trust on the real property now held by New BNE, the district court would therefore make Hanson the beneficial owner of that property. See

- 11 -

id. at 916-17 (citing Knox v. Knox, 25 N.W.2d 225, 226 (Minn. 1946).

Making Hanson the beneficial owner of the property would necessarily restrain (1) the FDIC's rights to title over New BNE's assets, (2) the FDIC's rights to realize upon New BNE's assets, and (3) the FDIC's rights to transfer New BNE's assets.  As a result, pursuant to § 1821(j), the district court is barred from hearing Hanson's constructive trust claim, and summary judgment was therefore proper.[6]

**IV.**

For the foregoing reasons, we affirm the district court's grant of summary judgment to the FDIC on Hanson's counterclaims in

---

[6]Our conclusion is bolstered by the numerous decisions in which this Court and others have held that § 1821(j) precludes jurisdiction.  See, e.g., Sahni v. American Diversified Partnerships, 83 F.3d 1054, 1058-59 (9th Cir. 1996) (holding that § 1821(j) bars suit to rescind the FDIC's sale of Department of Housing and Urban Development partnerships because the partnerships were part of the receivership estate of the failed financial institution), cert. denied, 117 S. Ct. 765 (1997); Tri-State Hotels v. Federal Deposit Ins. Corp., 79 F.3d 707, 715 (8th Cir. 1996) (holding that § 1821(j) bars suit to rescind purchase agreements and loan documents because suit would be inconsistent with the FDIC's power, as a receiver, to collect obligations and money due to a failed financial institution); Freeman v. Federal Deposit Ins. Corp., 56 F.3d 1394, 1399 (D.C. Cir. 1995) (holding that § 1821(j) bars suit for injunctive relief, declaratory relief, and rescission where relief would restrain FDIC's power to foreclose); Lloyd v. Federal Deposit Ins. Corp., 22 F.3d 335, 336 (1st Cir. 1994) (holding that § 1821(j) bars suit for injunctive relief because suit would restrain FDIC's power to foreclose); Carney v. Resolution Trust Corp., 19 F.3d 950, 956-57 (5th Cir. 1994) (per curiam) (agreeing that § 1821(j) bars suit for injunctive relief because suit would restrain FDIC's power to collect all obligations and money due and to preserve the assets of a failed financial institution).

the collection action.  We also affirm the district court's grant  of summary judgment to the FDIC on Hanson's constructive trust claim.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.